THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

Filed
OCT 2 2 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Jason Nieman,

    Plaintiff

vs.

Grange Mutual Insurance Company, Integrity Mutual Insurance Company

    Defendants

Case No. 3:11 CV 03404

CV 12 80258 MISC EJD PSG

Judge: Richard Mills

Magistrate Judge: Byron Cudmore

fee paid

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS AND MATERIALS BY LINKEDIN CORPORATION

Now comes Plaintiff JASON LEE NIEMAN ("Nieman"), *Pro Se,* respectfully requesting that the court compel Linkedin Corporation ("Linkedin") to produce certain documents and other materials. The representatives of LinkedIn have defied a properly issued subpoena, and have refused to provide any materials in response to the subpoena. Accordingly, the Plaintiff asks that Linkedin be ordered by this court to comply with the previously issued subpoena. Additionally, the Plaintiff respectfully requests that Linkedin Corporation be required to reimburse the Plaintiff for the court and mailing costs of bringing this miscellaneous action so as to compel responses that should have been voluntarily provided pursuant to a properly formatted subpoena.

This case is brought as a miscellaneous/ancillary action related to Case Number 3:11 cv 03404, currently pending in the Central District of Illinois. Plaintiff expects that Linkedin

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA
BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

1 of 13

Corporation and/or the Integrity/Grange Defendants may oppose this motion and the underlying subpoena, Plaintiff has included a motion requesting that the court grant him pro se ECF credentials and authorization. The Plaintiff is experienced withy ECF/CM through the related action and is in good standing in that regard in the Central District of Illinois.

The underlying case involves allegations of apparent age discrimination and/or retaliation committed by the Defendants (by way of their employees, executive officers, lawyers, and/or agents) as to the unlawful disqualification of his candidacy for the role of Vice President, Claims at Integrity Mutual Insurance Company some time between early 2010 and mid-2011. The review of the Plaintiff's candidacy was noted over the period of December 2009 to July 2011 by executive officers, employment agents (executive recruiters) and/or employees of the Defendants.

In the *Complaint*, and the related exhibits, Plaintiff asserts that several individuals appeared to do Internet research on the Plaintiff, including by way of the Linkedin.com system. These persons include Cindy Heindel, Vice President of Human Resources for Integrity and/or Grange. During her recent sworn deposition, Heindel stated on the record that she has never had a Linkedin account, ever. (See excerpt of deposition attached as motion exhibit A).

The Defendants have denied doing any Internet research on the Plaintiff during his candidacy. However, there is evidence to suggest that they did use the system to review the Plaintiff's profile on one or more occasions by way of common search engines (Google, etc.) and/or by way of Linkedin.com. This is now an issue of critical relevance not only as to their activities leading up to the Plaintiff's (wrongful) disqualification, but also as to their credibility:

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

2 of 13

(1) The Plaintiff recalls seeking that Cindy Heindel, Vice President of Human Resources for Defendant Integrity and/or Grange had a Linkedin profile. In her sworn deposition of September 21, 2012 she has denied that she has ever had a Linkedin profile and/or ever viewed the profile of the Plaintiff, in addition to indicated very limited use of Internet searches, generally. In contrast, the Plaintiff also recalls having viewed the profile of Ms. Heindel in or about the Fall of 2010 to Spring of 2011. The Plaintiff believes that Ms. Heindel deleted her profile, and perhaps any relevant communications held in relation to it, somewhere around the Summer to Fall of 2011. The Plaintiff first filed the first related EEOC charge in early August 2011 and the related Illinois litigation was commenced in November 2011.

(2) Critical relevant officers of the Defendants, including President/CEO Joseph DiMartino and VP Human Resources Cindy Heindel have denied that Integrity performs any type of internet searches on employment candidates. However, this appears to be highly suspect due to indications that other Integrity and/or Grange officers have viewed the Plaintiff's profile, and the sheer magnitude of Internet searches that are generally completed by human resources personnel, employment recruiters and other such persons with influence or decision making power as to hiring of candidates. In support of this statement, the Plaintiff offers a copy of a 2009 study commissioned by Microsoft Corporation. (See motion exhibit B, attached). This study suggests that approximately 75% of organizations *require* their staff to do social media and/or Internet searches on job applicants and that a similar number have admitted to using such searches to disqualify candidates. As of early

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

3 of 13

2010, a simple "Google" or internet browser search of the Plaintiff's name ("Jason Nieman" or "Jason L Nieman") has provided detailed evidence of the Plaintiff's protected conduct as to Nationwide Insurance Company and also generally shows his Linkedin profile as the highest ranked item in the search. (See motion exhibit C, attached) The record supports the conclusion that several employers and/or executive recruiters have discovered such information during common browser searches and have used that information as a basis to "blacklist", or illegally disqualify the Plaintiff from positions that he is highly qualified for, or even the most qualified candidate.

(3) Available evidence also shows that others at Integrity and/or Grange have used Internet search engines and/or Linkedin.com to review the Plaintiff's profile, including searches done by Grange VP Claims Peter McMurtrie and Sue Frantzen during the EEOC and/or litigation phase of the related Illinois action. But the record also suggests that Heindel and McMurtrie deleted their accounts/profiles after the Plaintiff discovered them, or after the EEOC charge and/or litigation was filed. The Plaintiff believes that this was done to try and erase their search history as to the Plaintiff, and others.

The Plaintiff has consistently maintained a Linkedin.com profile since approximately 2008. (See motion exhibit D, attached). The Plaintiff is a paid subscriber to Linkedin's premium plan. This membership allows him to see who has viewed his profile, at least to an extent. (See motion exhibit E, attached). Linkedin.com's system allows a user to set their privacy setting for searches to one of three settings; public, partially anonymous, or fully

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

4 of 13

anonymous. (See motion exhibit F, attached). The implication is clear: if Linkedin is allowed to resist properly formatted and sufficiently limited subpoenas, parties can research job applicants on the Linkedin.com website in complete anonymity, hiding evidence that they have done so, and trying to keep it from being discovered if the nature of their background and basis for employment decision making are raised in a subsequent discrimination and/or retaliation matter. Moreover, if they delay the employment decision, as was done in this case, they can then try to make the argument that they were not "on notice" so as to allow ephemeral and other types of evidence of their discriminatory and/or retaliatory search activities (including those related to social media, improper use of criminal records for disqualification, and other types of prohibited methods for disqualifying employment) to be shielded from later detection.

In December 2011, Cindy Heindel had an email exchange with Linkedin.com customer service. (See motion exhibit G, attached). In that exchange she sought confirmation from Linkedin.com that she had never had a Linkedin.com account. (In her deposition she testified that she had never even been on Linkedin.com, which seems to defy logic and fact in light of this exchange). The response was that they could not find an account related to that email address, but Linkedin has never affirmatively confirmed, so far as the Plaintiff is aware, that Cindy Heindel has never had a Linkedin.com account, profile and/or has never even used the site in any way.

Because Linkedin.com staff did not respond to numerous emails on the subject, and because the Defendants had never provided a firm response from Linkedin.com as to the true nature of Ms. Heindel's account and/or search history, Plaintiff's former counsel sent Linkedin

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

5 of 13

a properly formatted subpoena on July 9, 2012. A U.S.P.S. return receipt was received showing delivery as July 13, 2012. (See motion exhibits H and I, attached).

Linkedin responded on July 25, 2012 with a vague rejection, citing the Stored Communications Act, 18 U.S.C. § 2703(c)(2) ("SCA") as a basis for their refusal to comply. (See motion exhibit J, attached). This appears to be a consistent methodology for Linkedin.com, even where the nature of the request is sufficiently limited so as to require them to respond.

After Linkedin refused to provide any information, the Plaintiff contacted them again noting his plan to file a motion in the California court to compel production, and to seek costs as to the action. (See motion exhibit K, attached). Now, the Plaintiff suddenly received something other than a form letter response. On October 2, 2012 the Plaintiff received a detailed response from in-house attorney David Rothenberg. (See motion exhibit L, attached). For the first time, Linkedin was noting avenues for compliance, though they still refused to provide any information without signed authorization from all users in question. The Plaintiff provided Mr. Rothenberg a detailed response, including a clarification as to the subpoena/request that would allow Linkedin to comply. The Grange/Integrity Defendants were similarly placed on notice as to any authorization duties they had. (See motion exhibit M, attached).

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

6 of 13

# THE PLAINTIFF'S SUBPOENA AND REQUEST, AS AMENDED, IS SUFFICIENTLY LIMITED IN SCOPE AND CONTENT REQUESTED TO COMPLY WITH THE STORED COMMUNICATIONS ACT'S PROVISIONS AND PROTECTIONS.

Linkedin has argued that they cannot and/or will not comply with any part of the subpoena and/or request based upon the position that doing so would cause them to violate the SCA. But this is clearly not true. After Linkedin noted this position and argument the Plaintiff did further research and withdrew the request for communications as to outside parties such as employment recruiters Mike Tingley, Jeff Gipson, and Jim Roark. He will only reassert these if he can secure authorizations from them, and/or an order from the Illinois court compelling such consent.

The problem for Linkedin.com is that their continued refusal to respond to the subpoena in light of the very limited nature of the items sought. First of all, determining whether or not Cindy Heindel or Peter McMurtrie ever had a Linkedin profile (and when they may have deleted it) does not qualify as a "communication" which such a provider is precluded from producing. While Linkedin was likely correct in opposing and refusing to comply with some items (such as communications of parties such as Roark, Gipson, and/or Tingley) they have refused to respond properly to other aspects. As such, they have exposed themselves to sanctions pursuant to Rule 45(d) and/or (e). See *In re Faiella*, No. 05-bk-50986, 07- ad-1470, 2008 WL 1790410, at *5-*8 (Bankr. D.N.J. Apr. 18, 2008); *Int'l Bhd. of Elec. Workers, Tranchant v. Envt'l Monitoring Svc., Inc.*, No. 00-cv-2196, 2001 WL 1160864, at *1-*2 (E.D. La. Oct. 2, 2001); *Bulkmatic Transport Co., Inc. v. Pappas*, No. 99- cv-12070, 2001 WL 504839, at *3 (S.D.N.Y. May 11, 2001).

Fortunately, as a non-attorney the costs to the Plaintiff, and possibly to Linkedin, are only the costs of mailing this motion and the filing fee for the miscellaneous action. But this is conversely problematic as it likely encourages similar future behavior by Linkedin.

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

7 of 13

Rather than seeking to delay response, hoping the Plaintiff would grow frustrated and stop asking, if they truly felt that they had a basis to resist one or more aspects, they were required to seek a protective order, and/or to quash the subpoena in whole or part, rather than simply choosing to defy it under vague basis. See *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 & n. 5 (9th Cir. 1983)).

As to the core of Linkedin's basis for refusal to comply, citation of the SCA, Linkedin is clearly applying the statute excessively and in error. In *Crispin v. Christian Audigier et al.*, 2:09 cv 09509 (C.D. Cal. May 26, 2010) the court provided an excellent review of the issues of the SCA as related to a subpoena for information from various internet entities.

> " The SCA defines an ECS provider as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). With certain enumerated exceptions, it prohibits an ECS provider from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service." Id., §§ 2702(a)(1), (b).16"

Linkedin.com provides *for a fee* the ability to send messages through the site (Inmail). It additionally allows users to request that others add them to their profile (at no cost) with such communications being routed to a person's listed email account. Accordingly, at least some of the communications completed through Linkedin likely qualify for protection under the SCA. However, not all content is protected from release and/or discovery pursuant to a proper subpoena:

> "An ECS provider is prohibited from divulging only "the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). "Electronic storage" is "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." Id., § 2510(17)."

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

8 of 13

The request for the limited information of the information at issue does not violate SCA, accordingly:

(1) Whether or not Integrity/Grange executive officers Cindy Heindel or Peter McMurtrie have ever had Linkedin.com profiles (and if they did, when they were deleted).

(2) If any person who identified themselves as a current employee of Grange and/or Integrity since July 1, 2009 has ever viewed the Plaintiff's profile.

(3) The complete search history since July 2009 of all persons who have viewed the Plaintiff's profile (including their identity and not just "anonymous" or partially anonymous identification).

Linkedin also enjoys protection as their required production of the requested information:

> *No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, agents, or other specified persons for providing information, facilities, or assistance in accordance with the terms of a court order, warrant, subpoena, statutory authorization, or certification under this chapter." 18 U.S.C. § 2703(e).*

A copy of the subpoena and all related communications and supports has consistently been provided to counsel for the Grange and Integrity Defendants, just as they are being included as a notified party as to this motion. (See certification of service, below). At no time has any objection to the information release been noted, nor has counsel for the Defendants given any indication that they would not provide authorization, though they appear to have been slow to do so.

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

9 of 13

After long delays, and being provided a non-functional Internet link, the Plaintiff was finally provided with an authorization form by David Rothenberg, in-house attorney for Linkedin.com on October 18, 2012. The Plaintiff signed and returned the authorization form within minutes. This should allow release of his own information to himself, including the history of all persons who have viewed the Plaintiff's profile since July 1, 2009.

## POSSIBLE SPOLIATION OF EVIDENCE BY THE DEFENDANTS, WITH THE ASSISTANCE OF LINKEDIN CORPORATION

The suggestion from Linkedin.com seems to be that once a user deletes an account, it is destroyed permanently though this is another area of vague response. The Plaintiff is unable to find any other information on Linkedin's site, or otherwise, which clarifies this issue. But assuming this is Linkedin's position, such a pattern and practice would defy both technology and reasonableness. Moreover, an entity as sophisticated as Linkedin.com most assuredly has backup systems (likely multiple backup systems), and they have never asserted a contrary position as to the availability of the information sought. Based upon litigation they have been involved in, and/or the large number of subpoenas they have apparently received in the past several years, they are clearly on notice that they have a duty to retain customer account and communications records for a reasonable period of time. Were Linkedin.com permitted to immediately destroy emails, profiles, and other information of accountholders upon that user cancelling the account, they would be aiding and abetting intentional evidence destruction in at least some cases. But the fact that Linkedin.com has made no such assertion leads to the reasonable conclusion that they do retain such information and can produce it. But since they will not do so voluntarily, even under the authority of a properly issued subpoena, the Plaintiff is forced to ask the Court to compel cooperation of Linkedin.

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

10 of 13

The Plaintiff understands that he may be required to pay a reasonable fee (likely $250.00 or less) to Linkedin as they perform their searches for profiles of Ms. Heindel and Mr. McMurtrie, for other data, and provide it to the Plaintiff. This is not unreasonable. However, the information as to who has viewed the Plaintiff's profile is information Linkedin.com already maintains as part of the their business model. Additionally counsel for Integrity and Grange can provide Linkedin with ISP addresses and email addresses for Mr. McMurtrie, Mr. DiMartino, Ms. Heindel, and other Integrity/Grange employees and executive officers generally, to aid in the search and to reduce time and cost.

In the event that email or "inmail" type communications are located in the search, Linkedin.com can also produce those which are related in any way to "Jason Nieman" as specified, without violating the SCA. Such a request is sufficiently limited and tailored as to admissible information and so as to avoid the production of unrelated communications. This is obviously true as to Integrity/Grange employees, officers and attorneys, but is likely also true as to their employment agents (which Mr. Gipson, Tingley, and Roark qualify as). See *Thayer v. Chiczewski, et al.*, 2009 WL 2957317 (N.D. Ill. Sept. 11, 2009), *Special Markets Insurance Consultants, Inc. v. Lynch*, 2012 WL 1565348 (N.D. Ill. May 2, 2012).

The Integrity/Grange Defendants and/or their employees/executive officers or employment agents can additionally be compelled to provide authorization as required and/or needed as to such communications, to the extent any exist, but should not be required to give authorization as to the issues of whether or not they ever have had profiles, when they were deleted (if they had profiles and accounts and then closed them), if ever have even used the system (like Ms. Heindel, who denies having ever used the site), and whether or not they ever viewed the Plaintiff's profile. As to the issue of the Defendants' consent, as needed, the matter

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

11 of 13

has been in discovery since late June 2012. (See a copy of the *Scheduling Order* attached as motion exhibit N). The Plaintiff has had to move to compel responses twice, with the court issuing an order granting his motion in part just yesterday as to the first motion, and the second pending a response from the Defendants and then an order from the Illinois court. (See motion exhibits O and P, attached). Accordingly, if further consent is required, the Plaintiff can certainly file a separate motion with the Illinois federal court if the Defendants will not provide such consent by and through to their active employees and/or executive officers at issue.

## CONCLUSION

For these good reasons, and additional good reasons the court may determine upon its own review, the Plaintiff respectfully requests that the Court grant the Plaintiff's requests, compelling production of the noted documents and materials from Linkedin Corporation.

Respectfully submitted this October 18, 2012

Jason L. Nieman, *Pro Se*
1700 Windycrest Drive
Springfield, IL 62704
217 836 7126
Nieman46804@yahoo.com

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

12 of 13

## CERTIFICATE OF SERVICE

I hereby certify that on this date (October 18, 2012) the Plaintiff filed this motion and any related exhibits with the Clerk of the Court for the Northern District of California at San Jose, 280 S. 1st. Street, San Jose, CA 95113 by U.S.P.S. Priority Mail with tracking and delivery confirmation.

I also certify that I provided a copy of the motion and all exhibits to the following parties by way of electronic communication:

Brian P. Paul and David Croysdale, counsel for the Integrity/Grange Defendants, Michael, Best & Friedrich, LLP, bppaul@michaelbest.com, dwcroysdale@michaelbest.com.

LinkedIn Corporation, Attn: Legal Dept. and David Rothenberg, 2029 Stierlin Court, Mountain View, CA 94043. Legalprocess@linkedin.com, drothenberg@linkedin.com.

*/s/ Jason L. Nieman*

Jason L. Nieman, Pro Se
Nieman46804@Yahoo.com
1700 Windycrest Drive
Springfield, IL 62704
217 836 7126

Jason Nieman v. Integrity/Grange; PLAINTIFF'S MOTION TO COMPEL RESPONSE TO SUBPOENA BY LINKEDIN CORPORATION, WITH REQUEST FOR COSTS AWARD TO PLAINTIFF

13 of 13