THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

Jason Nieman,
Plaintiff

vs.

Grange Mutual Insurance Company, Integrity Mutual Insurance Company
Defendants

Case No. : 5:12-mc-80258 EJD

Judge: Hon. Paul Singh Grewal

Related to action: 3:11 cv 03404
Central District of Illinois

**PLAINTIFF'S MOTION FOR ISSUANCE OF PRO SE SUBPOENA TO LINKEDIN CORPORATION, SUBJECT TO RULE 45**

Comes now Plaintiff JASON NIEMAN ("Nieman"), *Pro Se,* respectfully requesting that the Court direct the clerk to issue the attached subpoena to the Plaintiff for the purposes of compelling testimony, information, and/or production of documents from Linkedin Corporation. The underlying action currently pends in the Central District of Illinois, at Springfield, under case number 3:11 CV 03404. However the party in question is a corporate resident of this federal district, outside of the Illinois Court's jurisdictional limit of 100 miles. Accordingly, subject to Rule 45(a)(2), this request and draft subpoenas are being directed to this court for consideration. The Plaintiff has attached copies of the proposed subpoena and rider as appendices 1 to this motion.

Plaintiff certifies that to the best of his ability and knowledge, this motion is compliant with Local Rule 7-4(b) as to size and format limitations and requirements.

**TABLE OF CONTENTS**

| | |
|---|---|
| Procedural and Factual History | 3 |
| Procedural History as to Linkedin Corporation | 4 |
| Specific Foundation and Request for Subpoena to Linkedin Corp. | 5 |
| Justification for Subpoena Request to Linkedin Corp. | 7 |

**EXHIBITS AND APPENDICIES**

| | |
|---|---|
| Proposed Subpoena to Linkedin Corp. | Appendix 1 |
| Rider to Proposed Subpoena to Linkedin Corp. | Appendix 2 |
| Copy *Motion to Compel 2*, Nieman v. I/G (C.D. Ill.) | Ex. A |
| Copy *Motion to Compel 3*, Nieman v. I/G (C.D. Ill.) | Ex. B |
| Who has viewed profile, Jason Nieman (Linkedin) 11/7/2012 | Ex. C |
| *Defendants' I/G Motion to Quash Subpoenas, E.D. WI* | Ex. D |
| *Plaintiff's Opposition to MTQ Subpoenas, E.D. WI* | Ex. E |
| Deposition Excerpt, Cindy Heindel | Ex. F |
| Deposition Excerpt, Joe DiMartino | Ex. G |
| Counterclaim of Integrity/Grange against Nieman (C.D. Ill.) | Ex. H |

## TABLE OF AUTHORITIES

| CASE | PAGE |
|---|---|
| *Crispin v. Christian Audigier et al.*, 2:09 cv 09509 (C.D. Cal. May 26, 2010) | 13 |
| See *Thayer v. Chiczewski, et al.*, 2009 WL 2957317 (N.D. Ill. Sept. 11, 2009) | 14 |
| *Spec. Mkts Ins. Consul., Inc. v. Lynch*, 2012 WL 1565348 (N.D. Ill. May 2, 2012). | 14 |
| *Col. Pict. v. Bunnell*, 2007 U.S. Dist. LEXIS 46364 (C.D. Cal. June 19, 2007) | 15 |
| *Nacco Matls. Handl. Gr. v. Lilly Company*, 278 F.R.D. 395 (W.D. Tenn. 2011) | 15 |
| *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) | 15 |

**PROCEDURAL AND FACTUAL HISTORY**

As pled elsewhere, the Plaintiff was a job applicant to the Defendant entities in 2009 to 2011. The Plaintiff believes, and has pled, that his candidacy was illegally terminated based upon his age and/or his having had participated in other protected conduct of an employment nature as to entities such as Nationwide Mutual Insurance Company, his former employer. Based upon the linkage to PACER by entities such as Findacase.com and Versuslaw.com persons such as the Plaintiff who have been required to litigate such matters now have their names and specific information about their protected conduct published by these Internet websites, and linked to the common search engine browsers such as Google, Yahoo, and Bing (Microsoft). The Plaintiff believes that the Defendants became aware of his prior protected conduct by virtue of ways including, but not limited to, such internet linkage and used it as a partial and/or complete basis to disqualify his candidacy, in violation of state and federal employment law.

Since the Plaintiff's lawful and justified EEOC initial charge filing, the Defendants have also undertaken a campaign of abuse and retaliation against him at every turn. They have attempted to portray him as a con artist whose motivation is a "large settlement". However, they have consistently provided shifting and unbelievable explanations for their conduct, and have used every tactic imaginable to avoid providing legitimate responses to the EEOC, the Plaintiff and/or the courts, and have similarly used a myriad of methods to try and disrupt the discovery process to deprive the Plaintiff of critical information which he is entitled to, and which he needs in order to secure additional proof in support of the pled allegations. The Plaintiff has been required to file three separate motions to compel, the latter two including

requests for discovery sanctions. The Defendants recently defied an order of the court in the Central District of Illinois, thus far refusing to provide a full and complete supplement of materials in native form with metadata attached, despite the court's express instruction that they do so prior to November 2, 2012. (Copies of motions to compel 2 and 3 are attached as motion exhibits A and B).

**PROCEDURAL HISTORY AS TO LINKEDIN CORPORATION**

Early on, the Plaintiff detected curiosities as to the Defendants and certain executive officers as to Linkedin. As previously pled, the Plaintiff believes that the Defendants' executive officers, employees, executive recruiters (employment agents), or other similar people detected evidence of his prior protected conduct as to Nationwide Insurance, which is widely published on the Internet by virtue of entities such as Versuslaw, Inc. (Versuslaw.com) and their affiliate Findacase.com. The Plaintiff believes that he was a leading candidate for the position in question (Vice President of Claims for Integrity and/or Grange) until the Defendants detected his prior protected conduct, and then immediately disqualified him. However, the Defendants appear to have used a very methodical process as to the disqualification, as the Plaintiff was never told of his disqualification until after the job was filled, approximately nine months after the likely disqualification date and seventeen months after his first interview.

The underlying case has been in discovery phase in the Central District of Illinois since late June 2012. Prior to bringing this pending ancillary action, the Plaintiff worked extensively with the Defendants, their counsel, Linkedin Corporation and Linkedin's in-house attorneys, to try and secure cooperation as to information which was requested by way of a subpoena which was properly issued by Plaintiff's former attorney, Ron Wisniewski, in July 2012. Despite

these efforts, Linkedin Corporation, by way of its employees and/or in-house attorneys were consistently uncooperative, non-responsive, and/or evasive. Ultimately, the Plaintiff was forced to file this separate action seeking to compel responses of Linkedin Corporation.

After the Plaintiff filed the ancillary action and arranged for service to be perfected upon Linkedin Corporation, the entity seemed to finally take the Plaintiff and his requests seriously. Linkedin assigned defense to the well-respected ZwillGen law firm, which includes offices in San Francisco and Washington D.C.

Upon assignment of the case, counsel for Linkedin took several good faith steps:

(1) Though Linkedin's in-house counsel had previously refused to waive service, firm partner Marc Zwillinger agreed to do so. (This offer was appreciated, but ultimately unnecessary as the Plaintiff was able to complete formal service upon the Defendants by way of a local process server, Rapidlegal, who completed personal service upon Linkedin on November 2, 2012).

(2) Attorney Zwillinger agreed to "meet and confer" with the Plaintiff as to the Plaintiff's requests. This meeting is set for November 8, 2012 at 2:00 p.m. Central Time.

Based upon these good faith actions, the Plaintiff agreed to Linkedin's request for a stipulation that would ask the court to modify the scheduling/briefing order as to the Plaintiff's *Motion to Compel*, so as to allow the parties the opportunity to try to conclude the dispute without requiring the Court to issue a ruling to do so. Based upon the consistent courtesy and good faith shown by the attorneys of ZwillGen thus far, the Plaintiff is cautiously optimistic that

the parties can work together to resolve their differences so that the Plaintiff can secured the requested information and ultimately withdraw his motion to compel, dismissing this action.

**MOTION FOR PRO SE SUBPOENA TO BE ISSUED TO PLAINTIFF FOR LINKEDIN CORPORATION**

As the Court is aware, a pro se Plaintiff cannot issue a subpoena in federal court. Additionally, after conducting additional research on the issue of the Stored Communications Act, 18 U.S.C. § 2701 et seq. (the "SCA"), the Plaintiff believes that Linkedin Corporation can not release all of the requested items from attorney Wisniewski's original subpoena, even if they exist. Items such as communications from outside employment agents (Jeff Gipson or James Roark, for example) likely cannot be provided without express authorization from each of those persons, which the Plaintiff does not currently have and is not likely to secure in the near future.

Accordingly, the Plaintiff agreed to modify the scope of his request to narrow the type and extent of information sought, so as to allow Linkedin to comply with the subpoena without violating the SCA. This narrowing was noted to have been referenced in Linkedin's recent stipulation to modify the briefing schedule, which was to be filed by that party.

Linkedin, for its part, after engaging highly competent outside counsel, now seems to be willing to work with the Plaintiff for the very first time. However, they assert that they have not been served with a valid subpoena on all of the specific issues sought. In order to remove any question on this point, and as Plaintiff's former attorney is no longer handing the case, the Plaintiff likely needs to serve them with a proper subpoena issued from this federal district, as to the narrowed scope of information. This will allow Linkedin to release the information

without facing adverse consequences related to assertions of any violation of privacy, and/or breach of any user agreement as to the parties for whom information would be released.

For their part, the Defendants (Integrity and Grange), and their attorneys, have been consistently non-responsive and/or uncooperative thus far. The Plaintiff has included them in the communications with Linkedin at every step, and has asked for signed authorization from certain relevant persons such as Cindy Heindel (Vice President of Human Resources, and noted decision-maker for the VP Claims position), Joseph DiMartino (CEO and President of Integrity) and Peter McMurtrie (former VP of Claims, Grange). The Defendants, by and through their attorneys, and/or witnesses themselves (including Mr. McMurtrie) have refused to provide authorization for information release from Linkedin, while simultaneously testifying that they have either never had a Linkedin.com account, never used the site in any way, and/or have never viewed the Plaintiff's profile. These assertions appear to be false in one or more ways, based upon evidence available to the Plaintiff.

## I. Justification for requested subpoena/information.

Based upon available evidence and recollections, the Plaintiff believes that Integrity/Grange executive officers Cindy Heindel and Peter McMurtrie had Linkedin profiles/accounts at one or more times in 2009 to 2012 and that they deleted or closed these accounts. Plaintiff further believes that these users closed these accounts after the Plaintiff viewed the profiles, apparently in response to such viewing. The Plaintiff recalls having viewed profiles for both of these persons and then checking later to find them deleted or absent. The Plaintiff also believes that these persons may have deleted their accounts/profiles in an attempt to eliminate and/or destroy evidence as to the existence of such accounts and

their use, including history of having viewed the Plaintiff's profile, the profiles of other job applicants, and/or having communicated regarding the Plaintiff or other applicants by way of the Linkedin "In Mail" system. As the Plaintiff has shown, depending upon one's account status (paid or unpaid), a user can view more or less detail as to those who have viewed his or her Linkedin.com profile. (A copy of a recent profile view listing for the Plaintiff is attached as motion exhibit C.) At that time the Plaintiff's privacy setting is recalled as having been set to "none" so that these persons likely could have seen that the Plaintiff viewed their profile, even if they had an unpaid account.

As the Court is aware, employers, hiring managers, and employment recruiters now use the Internet extensively to research employment applicants. Depending upon the source of the data, or the date of the survey (2008 to 2012), percentages of between 60% and 90% are quoted as to the percentage of employers, hiring managers, human resources personnel, and/or employment agencies who use the Internet and/or social media (such as Linkedin) as part of their review and vetting process for job applicants. Many of these survey respondents have admitted disqualifying and/or downgrading the candidacy of an applicant based upon their findings.

Profiles such as those on Linkedin.com can provide a valuable asset for business networking and/or employment search and recruiting. Candidates can be sought based upon certain filters such as field of experience and/or educational credentials. Indeed, Integrity/Grange executive recruiter Jim Roark specifically located the Plaintiff in this fashion and contacted him by way of Linkedin "In Mail" in October to November of 2010, while he was actively working the job/search.

Unfortunately, the level of information generally available fond also brings less desirable consequences. Race and/or national origin may be discernible based upon profile photos. Age may be estimated by undergraduate degree or high school diploma dates. In order to prevent intentional and/or unintentional bias, retaliation, and/or discrimination, organizations must have appropriate safeguards in place to prevent such abuses and misconduct. In the case of Integrity and Grange, however, no such safeguards were present and Vice President of Human Resources Cindy Heindel was allowed to make up her own rules, despite an admittedly nominal level of skill and expertise in areas such as claim, and little to no education, training, or knowledge as to compliance with employment protective statutes such as Title VII and/or the ADEA.

If one were to believe the Defendants' sworn testimony and pleadings, they are the exception; never using social media, the Internet, or Linkedin.com at any time to review information as to any job applicant. However, the Defendants' executive officers have also testified under oath that with there is no prohibition or impediment on the companies' systems to prevent them from "Googling" a candidate, or looking up their profile on Linkedin.com. This simply is not believable given the reflexive nature of such actions in our society. As the Plaintiff's profile view shows, even counsel for the Defendants (Michael, Best law firm) and for Linkedin (ZwillGen) have recently viewed the Plaintiff's Linkedin.com profile.

During discovery, Defendant witnesses/executive officers Heindel, and McMurtrie have also provided sworn testimony and/or pleadings in which they deny having ever had such a Linkedin.com profile, and deny having ever viewed the Plaintiff's profile at any time. (See Heindel dep. excerpt attached as motion exhibit F). Mr. Dimartino admitted to having a

profile, but similarly denies having ever used Linkedin.com to look up any job applicant, instead primarily limiting such searches to "former colleagues". (See DiMartino dep. excerpt attached as motion exhibit G).

As to Defendants Integrity and Grange, the first U.S. EEOC charge was filed by the Plaintiff in early August 2011. Around that time, the Plaintiff noted seeing that Sue Frantzen, Worker's Compensation Manager for Grange and former acting Vice President of Claims for Integrity, viewed his profile. This would have coincided with the dates of Integrity/Grange's internal EEOC investigation leading to the filing of a *Position Statement*. Ms. Frantzen was noted as a person who provided information to in-house attorney Beth Murphy. It is obvious that Murphy identified the Plaintiff by name, and that Frantzen then could not control her curiosity and chose to look up the Plaintiff's profile on the Internet and/or Linkedin.

On October 30, 2012, Defendant executive officer McMurtrie provided a sworn deposition wherein he denied knowing about the existence of Plaintiff Jason Nieman until January 2012. This information is in conflict with the noted actions of Sue Frantzen, and the record, as Defendant Grange admitted that Mr. McMurtrie also he provided information to Grange attorney Beth W. Murphy (such admissions being made in Grange's sworn Interrogatory answers of July 2012.)

The Plaintiff specifically recalls viewing Mr. McMurtrie's profile in approximately October 2011, after the EEOC issued a "right to sue" and provided him with the charge file, which identified McMurtrie as having an involvement in the process. Within a short period of time, however, McMurtrie's profile disappeared from the Linkedin.com system. The Plaintiff

recalls this exact same pattern occurring with Cindy Heindel, though he believes that she deleted her profile approximately six to twelve months prior, after he had viewed her profile.

Not surprisingly, Ms. Heindel and Mr. McMurtrie are somewhat unique. According to Linkedin.com, Grange is in a company size of 1000 to 5000 employees. Linkedin shows that 789 employees and/or executive officers of Grange have Linkedin profiles. The Plaintiff has noted that the majority of the peers of Mr. McMurtrie, and/or his subordinates, have such profiles. Similarly, the majority of the executive officers of Integrity also have active Linkedin profiles, including President and CEO Joseph DiMartino. It is more than slightly curious that Ms. Heindel and Mr. McMurtrie state that they have never had a profile, and have never used the Internet in any way to research a job applicant and/or candidate.

In order to secure critical information required and relevant to prosecution of the underlying action, and so as to remain within the confines of permissible release under the SCA, the Plaintiff has narrowed his subpoena request to the following information:

*1. Verification of the existence of any Linkedin profile having ever existed over the period of January 1, 2008 to the date of the response for:*

*(a) Cindy Heindel, Vice President of Claims for Integrity/Grange.*

*(b) Peter McMurtrie, Chief Sales and Marketing Officer (former Chief Claims Officer), Grange.*

*If such profiles existed previously and were deleted, the response should include the date of profile creation, date of profile/account deletion, and the reason for the deletion or closure of the account/profile. (Example: user request).*

*2. Verification of the existence of any communications between any employee or executive officer of Grange Mutual Insurance Company or Integrity Mutual Insurance Company, such communication having occurred between January 1, 2008 and the present date if such communication in any way involved Jason Nieman (and/or Jason*

*L. Nieman). To the extent that such communications exist, they should be produced. If the Respondent believes that such production would violate the Stored Communications Act, 18 U.S.C. Chapter 121 (§2701) then Respondent should advise the Plaintiff and/or Defendants and seek written authorization for such communications release, as required to comply with this subpoena.*

3. *A listing of the names of all persons who have viewed the public, private, and/or full profile of Jason L. Nieman from July 1, 2009 to present. The listing shall include the actual identity of the viewing party and not an anonymous identification, or "member of…industry…from" reference.*

4. *A description of the document retention policies of Linkedin Corporation as to user accounts, communications, and profiles, including any archiving or backup procedures. The description should include detail as to how long user communications and account/history information are retained by Linkedin after a user closes an account.*

See proposed subpoena and rider attached as appendices 1 and 2.

The reasons for requesting the first three items are likely clear to the Court in light of the history and allegations noted in pleadings thus far. The fourth item is especially crucial as well, as Linkedin does not appear to publish this information anywhere else, and there is no other reference to the item that the Plaintiff can find on the Internet, nor in case law precedent.

Effectively, Linkedin's structure is such that a party can set up an account (profile) and then use that status to view profiles of others. If they are not "connected" to that other person, the amount of information may be limited. However, many users leave their profile on full public view, either by desire, or because of a lack of understanding of the system. If the profile is set to full public view, the viewing party can see any information present, including things light profile photos, graduation dates, and even affiliation groups.

Conversely, if the viewing party has their privacy set to "full" the person whose profile they have viewed can only see "Linkedin Member" as the person who has viewed their profile. This format provides the illusion of anonymity to those that view profiles. But there is no reason for such users to expect that their searches are fully anonymous, particularly when the search activities become the subject of formal litigation.

In *Crispin v. Christian Audigier et al.*, 2:09 cv 09509 (C.D. Cal. May 26, 2010) the court provided an excellent review of the issues of the SCA as related to a subpoena for information from various internet entities:

> *" The SCA defines an ECS provider as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). With certain enumerated exceptions, it prohibits an ECS provider from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service." Id., §§ 2702(a)(1), (b).16"*

The information that the Plaintiff is seeking generally falls outside of the SCA, and moreover, the Plaintiff's requests are sufficiently targeted as to likely admissible information and so as to avoid the production of unrelated communications. This is obviously true as to Integrity/Grange employees, officers and attorneys, but is likely also true as to their employment agents (which Mr. Gipson, Tingley, and Roark qualify as). See *Thayer v. Chiczewski, et al.*, 2009 WL 2957317 (N.D. Ill. Sept. 11, 2009), *Special Markets Insurance Consultants, Inc. v. Lynch*, 2012 WL 1565348 (N.D. Ill. May 2, 2012).

Pursuant to a specific request, the Plaintiff provided a written (electronic) authorization to Linkedin to release information regarding his searches, to him. Nothing has ever been released, however. As to the history of who has viewed the Plaintiff's profile over the period in question,

there is no reason to believe that such a release would be prohibited as a "communication" by the SCA, and no reason for such users to expect true anonymity as to such searches. Even if they have such a desire or expectation, the facts and substantial need in this case support the release to the Plaintiff for the purposes of this legitimate litigation.

To the extent that actual communications (such as "In Mail" communications) are confirmed to exist by Linkedin, the Plaintiff can seek to compel authorization by way of the Courts of California and/or Illinois, in the related actions. In fact, the Plaintiff included this specific request already in his third motion to compel, recently filed against Defendants Integrity and Grange after the Defendants refused to respond in any way on the issue. (See copy of motion to compel 3 attached to this motion as exhibit B, at page 18, et seq.)

This case may be a small matter, but it has tremendous implications as to the rights of employees across the United States. If employers and their employees, executive officers, and/or employment agents are allowed to research applicants, and then simply delete their Linkedin.com accounts so as to destroy any history of searches or communications about applicants, it will have a tremendous chilling effect as to the rights of employees and prospective employees to be free from discrimination and/or retaliation. The other side of the equation is obviously ephemeral data which includes information such as the history of Internet activity for a computer and/or user. The Plaintiff also repeatedly requested that the location of such information and hardware (personal computers and/or servers) be identified by Defendants Integrity and Grange so that the Plaintiff could secure an expert to review the ephemeral data held on such computers. If the Plaintiff is correct, the Defendants have testified falsely on one or more occasions as to the true nature of their use of the Internet, including Linkedin.com, as is

relates the to the Plaintiff, his allegations, and the true credibility level of the Defendants and their executive officers at issue. After repeated requests went unanswered, the Plaintiff also moved to compel this information as well. (See copy of motion to compel 3, attached to this motion as exhibit B, at page 22, et seq.)

As the Court is aware, ephemeral data has been required to be preserved and produced in a number of cases where Internet search history has been at issue. See *Columbia Pictures Indus. Inc. v. Bunnell*, 2007 U.S. Dist. LEXIS 46364 (C.D. Cal. June 19, 2007), *Nacco Materials Handling Group v. Lilly Company*, 278 F.R.D. 395 (W.D. Tenn. 2011). The *Nacco*, The court relied on the established *Zubulake* standard that "[a] party has a duty to preserve all evidence, including electronically stored information ('ESI'), that it knows or should know is relevant to any present or future litigation." *Nacco Materials*, 278 F.R.D. 395, 402 (citing *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008)

A fundamental problem with ephemeral data is that it is fairly perishable as compared to other information, and a party can also try and argue that they were not reasonably on notice of the need to preserve such information when it has been destroyed. If the Plaintiff is correct, the Defendants decided to unlawfully disqualify him in October 2010, and then took careful steps to avoid communicating this disqualification for nearly a year. If correct, this scheme left them with the ability to argue that they were not on notice of any duty to preserve ephemeral data related to the Plaintiff, and/or the job search over that period. Because of this, Linkedin's practices become even more critical. If, as the Plaintiff suspects, Linkedin retains user information and communications for a fairly long period after a user has deleted a

profile/account, then their records will be able to provide proof of activity that may no longer be possible by way of the Defendants' computers, where the Defendants destroyed the data.

The responses of Integrity and Grange make this information even more crucial. The Defendants, by way of sworn correspondence and in the sworn deposition testimony of Cindy Heindel and Joseph DiMartino, have testified that their email systems automatically destroy/delete all emails in the Outlook email system (Exchange server) after just 30 days, and that no backup is retained. This is obviously an utterly unreasonable policy, if actually true. But the Defendants have steadfastly refused to provide a copy of their admitted Document Retention Policy, and moved to quash the Plaintiff's 30(b)(6) deposition request, which included questions about that very issue. The Defendants have already admitted to destroying one critical communication (Defendants' Bates D 1046) by way of this purported policy. The Defendants have also effectively admitted to having allowed executive officer Cindy Heindel to manually alter and/or destroy certain material evidence by way of placement of correction fluid ("White Out") on her handwritten notes, and then damaging and/or destroying the underlying writings. (See copy of motion to compel 3, attached to this motion as exhibit B, at page 17 et seq.)

It is entirely possible that the Defendants, now faced with the probability that Linkedin will comply with a subpoena may move to try and quash any subpoena issued by this Court. Such an act would be very consistent with their evasion and/or obstruction tactics that they have used in the past. The Defendants have formally moved to quash five depositions, including a 30(b)(6) and depositions for several current and/or former Integrity/Grange employees and/or executives who appear to have critical knowledge regarding the case. Each time they have done

so, they have attempted to argue that the Plaintiff is a vexatious litigant, who is harassing them, and have seemingly hoped that the court will overlook the actual facts in the case. (See copy of motion to quash depositions of Sheri Treu and Mary Jo Buchberger, attached as motion exhibit D). Each time a motion to quash has been filed (and/or for protective order), the Plaintiff has been forced to show the truth to the Court as to the real facts and issues present to oppose and/or defeat the Defendants' efforts. (See copy of Plaintiff's response and opposition to Defendants' motion to quash depositions of Sheri Treu and Mary Jo Buchberger, attached as motion exhibit E).

As the Plaintiff has found more and more evidence of deception and/or shifting explanations, he has provided this information to the relevant courts. As he has done so, the Defendants have become more and more aggressive and outrageous in their conduct. Recently, the Defendants filed a formal counterclaim seeking at least $700,000 in damages for alleged defamation against corporate Defendants Integrity and Grange, and for alleged abuse of process. Both claims are invalid and frivolous as a matter of law, simply providing further tangible evidence of the serial nature of their retaliatory conduct and mindset. (See motion exhibit H, a copy of the counterclaim, attached). But their actions also show that the Plaintiff is getting too close for comfort and is causing the Defendants and their attorneys to get increasingly aggressive in their efforts to keep him from discovering the truth. As he continues to get ever closer the Plaintiff wonders what their next retaliatory action will be.

Accordingly, the Plaintiff's proposed subpoena is relevant, limited in scope, focuses on information likely to be admissible in the Illinois actions against Integrity and Grange, and allows Linkedin to comply without violating the SCA. As such, the Plaintiff respectfully

requests that the court issue the subpoena so that it may be served upon Linkedin Corporation. The Plaintiff will thereafter provide a copy of the subpoena and rider to the Defendants, and will further provide the Defendants with a copy of any information which has been provided to him by Linkedin Corporation pursuant to the subpoena and/or any subsequent court order compelling responses.

Respectfully Submitted this November 8, 2012,

/s/ Jason L. Nieman
Jason Nieman, Pro Se
1700 Windycrest Drive
Springfield, IL 62704
217 836 7126
Nieman46804@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2012, I delivered a copy of this pleading, and the related materials , to the Clerk of the Court, U.S. District Court for the Northern District of California at San Jose by way of the ECF/CM system.

Plaintiff also certifies that he has also provided a copy of this pleading, and any related exhibits to the following parties:

Brian P. Paul and David Croysdale, Michael, Best & Friedrich, LLP, bppaul@michaelbest.com, dwcroysdale@michaelbest.com by way of electronic communication. *Counsel for the Integrity/Grange Defendants.*

Marc J. Zwillinger, ZwillGen PLLC, 1705 N. Street, NW, Washington, D.C. 20036, marc@zwillgen.com, and Michele D. Floyd (SBN 163031), ZWILLGEN LAW LLP, 425 Market Street, Suite 2220, San Francisco, CA 94105, michele@zwillgen.com. *Counsel for Linkedin Corporation.*

/s/ Jason L. Nieman
Jason L. Nieman, Pro Se
1700 Windycrest Drive
Springfield, IL 62704
217 836 7126
Nieman46804@yahoo.com